## Gearhart Estate.

Argued January 15, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Edward P. Najarian,* with him *George B. Balmer,* and *Balmer, Kershner, Mogel & Speidel,* for appellant.

*Edward G. Wink,* with him *John G. Callender,* for appellees.

OPINION PER CURIAM, May 9, 1969:

Decree affirmed. Each party to pay own costs.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent from this Court's affirmance of the decree of the court below which bars a charitable gift under §7(1) of the Wills Act of 1947, P. L. 89, §7(1), 20 P.S. §189.7(1), despite the *long-standing*, uninterrupted, and clearly expressed testamentary intent of the testatrix.

Testatrix died on September 7, 1966. Her last will, dated August 18, 1966, provided, inter alia, for a gift of $10,000 to the Reading Hospital in memory of her husband, $5,000 to be used for the maintenance of operating rooms and $5,000 to be used for maintenance and equipment in the anesthetic department. These provisions were identical to those contained in a will which testatrix had executed on August 10, 1966.

On November 5, 1965, testatrix had made a will which provided, inter alia, that her residuary estate was to go in trust to pay the income semiannually to the Reading Hospital.[1] This will was revoked by the will dated August 10, 1966.

Testatrix's last will was executed within thirty days of her death, and the court below decided that as a result, the charitable gifts therein were barred by §7(1) of the Wills Act which provides: "Death Within Thirty Days—Religious and Charitable Gifts. Any bequest or devise for religious or charitable purposes, included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. . . . Unless the testator directs otherwise, if such

---

[1] All three wills also gave gifts to St. Joseph's Hospital of Reading, which was involved in the court below, but which has chosen not to take an appeal and is thus not now before us.

a will or codicil shall revoke or supersede a prior will or codicil executed at least thirty days before the testator's death, *and not theretofore revoked or superseded* and the original of which can be produced in legible condition, and if each instrument shall contain an identical gift for substantially the same religious or charitable purpose, the gift in the later will or codicil shall be valid; or if each instrument shall give for *substantially the same religious or charitable purpose a cash legacy or a share of the residuary* estate or a share of the same asset, payable immediately or subject to identical prior estates and conditions, the later gift shall be *valid to the extent to which it shall not exceed the prior gift.*" (Emphasis added.) The court held that since the will of November 5, 1965 had been revoked by the will of August 10, 1966, the 1965 will was not available to save the charitable gifts in the will of August 18, 1966, since the Act requires that the prior will not be "theretofore revoked or superseded." I believe that this reading of "revoked or superseded" is excessively narrow and mechanical and does violence to the rationale of the Wills Act when applied in this case.

It is clear to me that the language in the statute aims at barring a charitable gift that a testator gave, rescinded, and *then*, within the thirty day period, *again* decided to give. In the case before us, however, testatrix *at all times* from the making of the 1965 will evidenced an intent to give the greater part of her estate to exactly those charities which benefited under her final will. Although testatrix's August 10th will revoked her 1965 will, it did not change in the least her general charitable intent to benefit appellant. Had the will of August 10th been her final will, even though it too had been executed within thirty days of testatrix's death, it would have been valid within Section 7(1) as being for "substantially the same religious or chari-

table purpose."[2] Yet because testatrix eight days later executed a new will, which changed not a whit the charitable gifts, the court below held that the gift was barred.

The Wills Act of 1947 was intended to soften the effect of the Wills Act of 1917, Act of June 7, 1917, P. L. 403, §6, which provided no way to validate a charitable bequest made within thirty days of testator's death. The purpose of the earlier act was to insure that "testamentary gifts to religion or charity were the result of deliberate intent of the testator, and were not coerced from him while in a weakened physical condition under the influence of the doubts and terrors of impending death." *Paxson's Estate*, 221 Pa. 98, 111, 70 Atl. 280, 285 (1908).

"It is graphically clear that the exceptions set out in Section 7(1) of the Wills Act of 1947 were intended to remedy that situation [the inflexibility of the 1917 Act] and to remove from the operation of our thirty day prohibition those cases which did not, in reason, fall within the purpose of the thirty day rule. [Citations omitted.]

---

[2] The fact that the 1965 will gave appellant her residuary estate in trust to pay the income to appellant, while the later wills gave appellant $10,000 outright to be used for certain hospital purposes would not bar the gifts. The income gift payable indefinitely is substantially the same as an absolute gift, see *McGuigen Estate*, 388 Pa. 475, 480, 131 A. 2d 124, 127 (1957), and the restrictions on the use of the money in the later wills are not significant for present purposes. Thus we have here charitable gifts, "for substantially the same religious or charitable purposes" payable as "a cash legacy or a share of the residuary estate. . . ." as the statute requires.

Section 7(1) of course limits the gift payable to the charity "to the extent to which it shall not exceed the prior gift." If necessary this can be ascertained here, as it apparently was in *McGuigen Estate*, supra, by computing the value of appellant's residuary gift under the earlier will.

"In light of this clear legislative history and purpose, it is obvious that what was sought to be accomplished by the validation requirements involved in this case was a form of proof which would satisfactorily show that the *charitable intention of the testatrix existed for more than thirty days.* Since the section which we are considering is remedial in nature, we have held that *it must be liberally construed in order to effectuate its purpose." Baum Estate,* 418 Pa. 404, 410-11, 211 A. 2d 521, 524 (1965) (emphasis added).

The purpose of §7(1) thus is to effectuate charitable gifts that have been intended by a testator for more than thirty days.[3] There can be absolutely no doubt that that is the situation here. Under our decision in *Baum Estate,* we should interpret the statute to carry out its purpose, a purpose which aims at allowing the very type of gift that we have before us. Instead, the decision of the court below, affirmed now by the majority, ignores the long-standing intent of the testatrix because she *reaffirmed* that intent in a will that by happenstance revoked the earlier will for purposes irrelevant to this case. Thus the majority seems concerned only with the ancient requirement that a charitable gift avoid imagined or nonexistent problems of undue influence by complying with senseless technicalities, and fails to rely on the clearly expressed charitable intent of the testatrix and the public policy encouraging charitable gifts. I cannot abide such a result which so patently ignores the purpose of the Wills Act and the intent of the testatrix which existed long before the thirty day period, and I vigorously dissent.

Mr. Justice EAGEN joins in this dissenting opinion.

---

[3] Section 7(1) thus represents a legislatively endorsed public policy of the Commonwealth—encouraging charitable gifts. This policy also is evidenced by the favorable and special tax treatment which the Legislature has accorded to charitable gifts. See Act of June 15, 1961, P. L. 373, §302, 72 P.S. §2485-302.